SOUTHWORTH ET AL. *v.* STOUT ET AL.

[No. 16,961. Filed October 21, 1942. Rehearing denied December 2, 1942.]

430

*Arnold, Degnan, Dohnalek & Goheen,* of South Bend, for appellant.

*George Stevens,* of Plymouth, for appellee.

FLANAGAN, C. J.—Appellee Edgerton Manufacturing Company, Inc., an Indiana Corporation, with its principal place of business at Plymouth, Indiana, for a number of years prior to March 7, 1939, was in the business of manufacturing baskets and other merchandise containers. It owned on the last named date two plants and places of business, one at Plymouth, Indiana, and one at Paoli, Indiana. It also owned the real estate on which each of these establishments were conducted.

Being in financially embarrassed circumstances, on March 7, 1939, it perfected an assignment of all its real and personal property for the benefit of creditors

to one Burg, pursuant to § 17-101, et seq., Burns' 1933, § 749, Baldwin's 1934. After recordation of the instrument of assignment, Burg gave the statutory bond and qualified in the Marshall Circuit Court under the statute. Thereafter Burg was succeeded as such trustee by appellee Raymond Stout.

On May 29, 1941, the trustee, having operated the business under authority of court in the meantime, filed his petition asking authority to sell all of the assets of the trust. The petition set forth that it would be to the best interests of creditors and of the trust to sell the business as a going concern, that all assets including both real and personal property be sold, that the purchaser at the sale assume all debts and liabilities of the trust except liability for any claim based on preferred stock or accumulated dividends thereon and that any purchaser be permitted to apply upon any portion of his bid preferred stock of the old company at a valuation equal to the amount each share would receive on distribution of the proceeds of the sale.

On June 3, 1941, Francis M. King, a preferred stockholder, filed objections to the mode of sale. After a hearing on the objections they were overruled, the petition granted and private sale ordered upon three weeks' notice by newspaper. Thereafter, and after the report of sale, appellees George Groff, Omer Hall and Bert Trotter, as assignees of Francis M. King, dismissed their objections.

The assignor had outstanding 712 shares of preferred stock. Appellant Frank S. Southworth owned 7½ shares, appellant Martha Reisch owned 10 shares and appellant Mary D. Southworth owned 6½ shares.

On September 2, 1941, said appellants filed their motion to vacate the order of sale. Consideration of their motion was continued "until such time as the

trustee files and asks the approval and confirmation of the court of the report of sale."

On September 6, 1941, the trustee filed his report of sale. On that date appellant Martha Reisch filed her separate objections and exceptions to the report of sale and it was stipulated that the motion to vacate the order of sale theretofore filed by appellants Frank S. Southworth, Martha Reisch, and Mary D. Southworth should be taken and treated as objections to the confirmation of the sale. Hearing was held at which the only evidence presented and heard was as contained in the verified petition of the trustee for the order to sell, the report of sale and the verified petition of appellants to vacate the order of sale and the separate objections of appellant Martha Reisch, all hereinabove referred to. The report of sale was then approved.

There was a motion for a new trial on behalf of appellants in which it was assigned that the decision of the court was not sustained by sufficient evidence and was contrary to law, which motion was overruled. The assignment of errors here challenges the ruling on the motion for a new trial and also assigns separately error in overruling appellants' petition to set aside the order of sale, overruling appellants' objections to confirmation of the sale, and in confirming the sale.

Under each assignment of error appellants assert five propositions:

1. The court was without authority to order the sale for other than cash or credit.

2. That appellant Martha Reisch, by reason of the maturity of her preferred stock in 1927 was a creditor and as such was entitled to sale of the assets for cash and distribution to her the same as any other creditor. That the evidence shows that there were assets suf-

ficient to pay all creditors in full, including preferred stockholders whose stock had matured, and therefore the limitation in the order of sale that any bidder should assume and pay all obligations in full except those arising out of matured preferred stock, discriminated against her.

3. The court was without authority to require the creditors to look to the purchaser and could only have the assets sold and the proceeds distributed.

4. That the evidence showed sufficient assets other than the real estate to pay all debts other than debts owing on matured preferred stock and the court could therefore only order sale of the personal assets and restore the real estate to the assignor corporation.

5. The court was without authority to order sale of both real and personal property in entirety because under such sale the amounts bid for real estate could not be separated from the amounts bid for personal property and appellants were therefore deprived of the right provided by § 17-111, Burns' 1933, § 759, Baldwin's 1934, to procure and offer a bidder for the real estate who could guarantee that on resale it would sell for 10 per cent more.

Section 17-110, Burns' 1933, § 758, Baldwin's 1934, under which the sale was made reads as follows:

"The trustee shall, as soon as possible after said appraisement is filed, proceed to collect the right and credits of the assignor, and shall, after giving thirty [30] days' notice of the time and place, as provided in the sixth section [§ 17-106] of this act, proceed to sell at public auction, the property appraised (except such as has been set off to the assignor), to the highest bidder for cash, or, upon credit, the trustee taking notes with security to be approved by him, waiving relief from valuation or appraisement laws, payable not more than twelve [12] months from date, with interest. A full return under oath, shall be made of the sale by the

trustee to the clerk of the circuit court, who shall file the same with the other papers in the case: Provided, That said court, or the judge thereof, in vacation, may, upon the sworn petition of the trustee, or on like petition of a creditor or creditors of [the] assignor, for good cause shown, extend the time for selling said property, or any portion thereof, to such time or times as the court or judge may determine will subserve the best interests of the creditors and may also, in like manner, extend the credit on sales not exceeding two [2] years. The court may also, on like petition, authorize or ratify private sales of said property when it is shown that such sales were, or will be, beneficial to the creditors of the assignor; the court shall exercise a supervising power over the estate of the assignor, and may make all necessary orders, in the interest of the creditors, for its control and management by the trustee, before sale, and shall, after sale, have the power to compel the trustee to report the money in his hands for distribution, and shall compel the same to be paid into court for distribution whenever the assets are shown to be sufficient to pay ten [10] per cent dividend upon the indebtedness; and such distribution may be ordered from time to time when, on the application of any one interested, it is shown to the court or judge thereof that there is [are] sufficient funds in the hands of the trustee to pay said dividend of ten [10] per cent."

This statute is clear. It provides that "the court may also, on like petition, authorize or ratify private sales of property when it is shown that such sales were, or will be, beneficial to the creditors of the assignor." This gives the court broad authority and places no limitations as to notice, terms or conditions so far as private sales authorized or ratified by it are concerned. Had cash been received all preferred stockholders, who were the only ones entitled to distribution, would have received just what they did receive. Appellants would have received no more. The

stockholders who turned in their stock on the purchase price in effect receipted for the amount they would have received. We see no legal objection to such provision in the order of sale. See *Jones* v. *Becker* (1937), 212 Ind. 248, 8 N. E. (2d) 587.

Appellants' second proposition is based upon the theory that since the stock of appellant Reisch had matured she was a creditor and therefore entitled to payment ahead of the holders of unmatured preferred stock. Appellant Reisch in her objections to confirmation of the report of sale alleges that her stock matured in 1927, but there is nothing in the record to show whether or not the other preferred stock had matured except a petition filed by Francis M. King which asserts that all preferred stock matured in 1927. But even though the stock of appellant Reisch was the only matured stock, she did not become a creditor of the corporation, *Cring* v. *Sheller Wood Rim Mfg. Co.* (1934), 98 Ind. App. 310, 183 N. E. 674, and therefore had no position upon liquidation different than that of other preferred stockholders.

We find no merit in appellants' third proposition. No creditor is complaining because he must look to the purchaser for payment of his claim and appellants could not possibly be harmed thereby.

By their fourth proposition appellants insist that if there was sufficient personal property to pay all but preferred creditors, the court was obliged to order sale of the personal property and then turn the real estate back to the assignor corporation. We find no such provision in the statute. To the contrary § 17-110, Burns' 1933, § 758, Baldwin's 1934, specifically provides that the trustee shall sell all the property except such as has been set off to the assignor.

Finally, under their fifth proposition, appellants assert that they were deprived of the right to have the bid on the realty raised by 10 per cent under § 17-111, Burns' 1933, because the real and personal property were sold as an entirety.

It is the purpose of § 17-111, Burns' 1933, *supra*, to give creditors the benefit of the best available sale price for the real estate sold. Similarly § 17-110, *supra*, by giving the court the right to sell personalty and realty as an entirety seeks to give creditors in the proper case the advantages to be obtained from selling a business as a going concern. When the two statutes are read and construed together it is clear that § 17-111 is not intended to limit the broad powers given the court under § 17-110. When real and personal property is ordered sold as an entirety, the bid can only be raised under § 17-111 by increasing by the required 10 per cent the amount offered for the entirety.

We find no reversible error in the record.

Judgment affirmed.

NOTE.—Reported in 44 N. E. (2d) 225.